UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


Paula L. Young

V.                                                          CIVIIL ACTION

                                                            NO._____

Megan J. Brennan

Postmaster General

United States Postal Services

Northeast Area Agency


COMPLAINT


1.  My name is Paula Young. I am an African American female who reside at 56 Myopia Road, Hyde Park, Massachusetts and I am the Plaintiff in this matter.

2.  The Primary Defendant is Megan Brennan, the Postmaster General of the United States Postal Service.  The Defendant's address is [776 Main Street, Waltham, Massachusetts]. Others involved are:  My former manager was Christopher Porfert and my supervisors were Lisa Maydoney and Mark Boyden.  Mr. Porfert was also the supervisors of Ms. Maydoney and Mr. Boyden.  Mr. Porfert, Ms. Maydoney and Mr. Boyden are all white.

3.  My claims arise under the Rehabilitation Act (federal disability discrimination and retaliation), Title VII (federal sex/race discrimination and retaliation), 42 USC sec. 1981 (race discrimination), and the Family Medical Leave Act.  I also have claims under Chapter 151B (Massachusetts disability and sex discrimination and retaliation) and for breach of contract.  Note:  There may be more potential claims.

<u>Jurisdiction</u>

4.  I was hired by the United States Post Office on May 2008. Between 2008 and October 2010. I worked in Wilmington, Burlington, Revere and other postal annex's as needed. In March 2010, I was transferred to the Waltham Annex Post Office.

<u>Facts</u>

1.  On October 8, 2010, while driving, I was reared ended on the corner of Lincoln Street and Lexington Street in Waltham while at a stop sign. I came to a complete stop them moved a little further out to make sure I had the right of way and while completely stopped I was hit in the Postal Vehicle while in route.

2.  I called my Chris (manager) who came out to the scene with the mechanic and noticed there was no damage to either vehicle and asked if I was okay and I stated that I had a slight headache and it was likely that I would not feel any real pain until the next day. I gave Chris the other operators insurance information and was instructed to continue back to work.

3.  First, hospital visit at Salem Hospital, October 8, 2010, with a doctor's note to be out of work until October 11, 2010 with medicine. The doctor's letter was faxed at this time from the hospital. See attached.

4.  I called Greg (weekend supervisor) on October 9, 2010, to have the day off work due to the accident and the doctor's note.

5.  October 11, 2010, I returned back to work but I continued to experience pain. I asked Chris for the information of the other operator.

6.  I was told by Chris that no claim was filed because there was no damage to either vehicle. However, since Lisa handles all accidents report, I could get the information from her.

7.  October 16th, I asked Lisa for the other operator's information which she gave tome and asked me to make a copy of it.

8. October 17th & 18th, I called the work hotline to get the day off work due to the pain.

9. October 19th, I was seen at the Beth Israel Hospital, because I was still experiencing pain and I was released from work until November 2, 2010. I was given medicine and a prescription for physical therapy. Again this was faxed to the Waltham Post Office to the attention of Chris or mark from the hospital.

10. October 19, 2010: <u>I was eligible for FMLA.</u>

11. November 1st, I was seen at the North Shore Rehabilitation and was released from work for an additional 4weeks. Those documents were faxed to the Waltham Post Office to the attention of Chris or Mark from the rehabilitation office. Lisa called me shortly after wanting to know what was going on, stating that the accident was not reported and that **"they were going to be in their ASSES for not reporting this accident.**

12. November 2nd, I received a call from Chris, Mark and Lisa via speakerphone but Chris, Lisa and I were the only ones engaged in the conversation. Chris felt that my injuries were not that serious, but I explained to Chris that I did suffer from the pain. Chris felt that my injury was due to child birth in the past and I explained that my youngest child is 12 and that could not be possible. Chris expressed to me that he would give me the time off to deal with some persona matters and again I explained to Chris that I was in pain and I needed time to heal and this has nothing to do with my personal problems. I expressed to Chris that the doctor put me out of work and I cannot tell the doctor what to write in his report. Chris then stated if I reported this accident that I would not like the outcome of it. Chris then asked what was I going to do this case and I expressed that I have not done anything but go to the hospital and physical therapy so I can get better. Chris explained to me that I needed an Attorney in order for my medical bills to be paid and once again I explained to Chris as I did to Lisa the day before, right now I am only interested in getting better at this moment, I have not done anything else and I have not spoken to anybody about workman's comp.. Chris then stated that I needed to come in and fill out some paperwork for the accident. After this conversation I sought legal assistance.

13. I was scheduled to come in 3 days later but was unable to make it due to sickness and my daughter called and spoke with Lisa to cancel the appointment.

14. I called the office and spoke with Chris to reschedule the appointment and asked that I have a union rep. accompany me to the meeting and Chris got furious and asked why I needed a union rep. and he asked if I was in the union and I told him no but he agreed to have one there for me.

15. November 23rd, I went to the scheduled meeting, only to be giving a piece of paper by Chris telling me to resign from my position at the post office, so it would not look bad on my resume that I was fired by the post office but I declined his offer being that I did nothing wrong.  He also stated tome that he felt I was only taking this money from the other operator and that my injuries were due to another injury.  **"Please remember that no  claim has been filed by me or the office at this time".**  After our conversation, I was giving the paperwork to file the accident report that happened on October 8, 2010.

16. November 29th, I was seen at the North Shore Rehabilitation, which stated I was able to return to work on December 8th, for light duty.  Again this was faxed to the Waltham Post Office to the attention of Chris or Mark from the rehab.  Office.  The doctor refused to fill out the **"duty status report",** because my manager or supervisor did not fill out there part of the paperwork.

17. December 6th, I called and spoke to Lisa to find out if I was put back on the schedule and she stated that Chris would call me tomorrow being that she did not handle the schedule.

18.  December 7th, I called the Post Office and spoke to Chris, who stated that they were working on the schedule and for me not to call the office anymore.  They would call me when I am needed.  I also faxed the **"duty status report"** along with a wage and salary verification form to Chris, asking him to complete the forms and mail them to either me or the doctor, so the forms could be filled out in a timely manner.  I did not get a response.

19. December 9th, I faxed the information to my attorney asking him to fax or mail the wage and salary form to Chris and maybe he will get a better response than I did and once again Chris did not reply.

20. December 13th, I was released to return to work, full duty.  On December 29, 2010.  The paperwork was faxed to Chris, but I did not get a response.

21. December 20th, I spoke to Kevin Flatery from the Union Hall and I explained the whole situation to see where I stand with this case and he asked me to fax over all the information that I have on this case to him including all medical documents.

22. December 23, 2010, I received a letter from the Human Resources Manager from the Post Office, stating that I was terminated as of 10/18/2010.  I called Mary (union rep.) and notified her of this status and Mary made a call to Chris who informed Mary that it was done by a mistake and I will be reinstated in a few days.

23. December 29, 2010, I received a letter from my manager Chris F. Porfert stating that I failed to provide accurate documentation about my absence, therefore I have been placed in an (AWOL) status and Chris wanted me to contact him via telephone on Monday Jan. 3, 2011 for a pre-disciplinary hearing concerning my attendance.  I did not attend this meeting due to a hospital appointment that had been scheduled prior to this meeting.

24. January 5, 2011, I faxed several documents to Kevin Flatery at the Union Hall (781-281-1127) to show proof that I did in fact fax prior documents to Chris/Mark in a timely manner.  See attached.

25. January 6, 2011, I received a 2nd letter from my Attorney Jason Stone wanting the wage and salary forms completed by my manager being that Chris has not completed the first set that was giving to him on November 2, 2010.

26. January 10, 2011, I mailed Chris a letter stating why I missed the pre-disciplinary meeting and also wanting to know how Chris could state that I have been "AWOL" since October 18, when in fact I gave Chris all the medical documentation on November 23, 2010 when I was in his office to do the accident report.

27. January 10, 2011, I received a letter from "Workman's Comp." stating that they did not receive any other information with my claim form which was filled out in Chris's office (11/23/2010.  I called the Workman's Comp. and spoke to a representative and I was told that no medical doc. Were included with my claim.  After speaking with the Workman's Comp. I called Mary (Union rep.) and explained the situation and Mary asked me to send her a copy of all my medical documentation so she could send it to the Union Hall as well as the Workman's Comp. being that Chris was not supplying them with the documentation that was giving to him on November 23, 2010.  I sent these documents by certified mail.  (I have the proof of this mailing).  See attached

28. January 23, 2011, I e-mailed Judith Rizzo of the Human Resources Office, asking a return date to work and I did not get a reply, however, I did speak to Judith Rizzo who stated that I would get my reactive letter in the mail and I would be contacted by my manager for a return date.

29. January 26, 2011, I received a letter from the Human Resources Manager stating that I was "separated in error" and it is backed dated to October 18, 2010 along with another letter stating a pay adjustment.  These actions took place as of January 19, 2011.

30. February 8, 2011, I faxed a letter to Thomas Janoski of the Workman's Comp. (617 624 6604), explaining why my paperwork was not filled out in a timely manner.  I explained that I did indeed inform my manager of this accident by the (Chris) took it upon himself not to file this accident report on paper and therefore I should not be held responsible for his actions and I also informed Mr. Janoski that Chris has not filled out any information pertaining to this case with my attorney or the duty status report as well.

31. February 13, 2011, I e-mailed my manager Chris, asking to speak with him about my employment status, I asked him to give me a call so we could set up a time to meet but Chris did not respond reply.

32. February 16, 2011, stating I may claim compensation for wage loss resulting from this decision by filing a CA-7 form.

33. February 16, 2011, I received a letter from Workman's Comp. stating that I was not entitled to Continuation of Pay (COP) during my absence from work being that my injury was not reported on a form approved by OWCP within 30 days.  I called Worknman's Comp. and explained the circumstances of this case to Yuvonne Collins (workman's comp. rep.), who asked me to fax all the medical docs. (617 654 6604).  This does not exclude me from any other benefits that Workman's Comp. my offer.

34. February 16, 2011, my claim for Workman's Comp. was accepted.

35. February 19, 2011, I wrote a letter and filed an appeal with Workman's Comp., disputing the decision that was made concerning the COP, only to explain that I was not at fault for the lengthy filing of the forms.  I expressed that I had proof that I tried to get in contact with my manager Chris but he refused to answer any of my calls along with my

e-mails.  I mailed all of these documents to Mr. Thomas Janoski (Workman's Comp. rep.).

36. February 19, 2011, I sent an e-mail to my manager Chris F. Porfert asking for the CA-7 forms, this time Chris responded, but I had already received the forms from a friend and mailed them, I did thank Chris for finally responding to my e-mail.

37. March 2, 2011, I received a letter from Chris Porfert stating that I will be terminated on April 9, 2011, for failure to be regular in attendance.  Chris also called the Union Rep. Mary, who asked me to mail her a copy of all medical docs. So she could file a grievance. I mailed Mary the Union Rep. a letter in detail of all occurrences from October 8, to the present.  (It was sent express mail and I have the receipt of service).

38. March 2, 2011, I call the Union Hall and spoke to Steve Mahoney.  Steve asked me if I would consider returning back to work without the "COP" (continuation of pay), being that if the Post Office pays me the COP, then I would be fired, but if I do not accept the COP, I could return to work.  I never heard from Steve Mahoney again.

39. March 18, 2011, I received a letter from Workman's Comp. stating that I was not eligible for any benefits because I have not worked for the Post Office for more than a year, which in fact is not true.  I have worked for the Post Office since May 2008, but Chris Porfert fails to acknowledge this and only states that I have been at the Post Office since June 2010.  Therefore benefits cannot be paid out until all of this is resolved.

- March 18, 2011, I faxed over all my paystubs beginning May 2008 to prove my employment history in order to be eligible for Workman's Comp. to (617 654 6604).

40. April 9, 2011, I applied for Unemployment Benefits.

41. April 11, 2011, I was on the computer looking at my pay earnings, being that I was bored, only to find out that I had a check that was dated for the 1st of and 4th pay period of the year but these checks were not issued to me.  I called Mary the Union Rep. and explained the situation and she asked me to mail her copies of these pay periods.  (I have print outs of these pay periods dated April 11, 2011).

42. April 12, 2011, Mary called me and told me to call the Waltham Post Office and speak to Lisa about my back pay.  I called Lisa and asked about these checks:  and Lisa replied

that she had to ask Chris (manager) if she could mail these checks to me that were located in his desk and she would call me back. Lisa called back in 2 minutes stating that she had just dropped them in the mail.

43. April 13, 2011, I received 2 checks from the Waltham Post Office. One for the 1st and 4th pay period of the year.

44. April 22, 2011, I received the check from the department of Labor, which covers the pay period from October 18-December 29, 2010 in the amount of 4,507.18.

45. May 5, 2011, I talked to Jan and adjuster from the Unemployment Office who asked me questions concerning my separation from the Post Office. I also faxed Jan 37 pages of documentation to fax 413 784 1308.

46. May 9, 2011, I received a letter from the Department of Labor stating that my **"COP"** was **"AFFIRMED"**, since Chris Porfert did not submit a written comment regarding the pending review.

47. May 13, 2011, I was denied Unemployment Benefits being that Chris Porfert stated that I was failure to be regular in attendance and I did not notify the office of any absence or medical leave. I filed an appeal with the Unemployment Office.

48. May 27, 2011, I received a letter from Harriet Rynkiewicz (dispute resolution office): concerning the back pay decision, wanting me to fill out the necessary paperwork in order for me to receive my back pay form January 1-May 27, 2011. I also spoke to Rynkiewicz, who state I should receive the pay in 4 weeks.

49. June 13, 2011 I had an appeal at eh Unemployment Office, in which Chris and an Attorney for the Post Office and I attended. I was informed that I was reinstated by the Post Office again in May but I will not be rehired in June. I never received a cop of this notification. A copy of all updated documents were faxed and mailed to Kevin Flatery. At the Union Hall in Woburn. (fax 781 281 1127 and they were sent by certified mail).

50. June 14, 2011, I wrote a letter to Kevin Flatery, requesting a copy of the grievances that was filed. This is my 3rd request. (This letter was faxed and mailed). Today, I received 2 copies of the grievances in the mail.

51. June 22, 2011, I filed an EEO complaint against my employer.

52. June 29, 2011, a letter was sent to me to Pre-Complaint Counseling in which I replied to with my Attorney Neil Sullivan.

53. July 11, 2011, I attended part 2 of the hearing at eth Unemployment Office along with my Attorney Neil Sullivan, Chris Porfert and an Attorney representing the Post Office.

54. July 26, 2011, I received a letter from the Hearings Department from the Unemployment Office, stating that (The claimant did not knowingly violate a rule or engage in deliberate misconduct and the claimant is not subject to disqualification under Section 25 (e) (2of the Law). The claimant is entitled to benefits for the week ending April 16, to present.

55. August 23, 2011, Today, I made a call to Harriet Rynkiewicz (dispute resolution office) to inquire about my back pay check. Mrs. Rynkiewicz called the Waltham Post Office and spoke with Chris Profert, only to find out that he has had the check in his desk since August 11, 2011. Mrs. Rynkiewicz stated that I would receive the check in the mail on August 26, 2011 by "Express Mail". If I did not receive this check on the 26th then I should give her a call.

56. August 24, 2011, I received an "Express" envelope from Chris Porfert at the Waltham Post Office which contained a check dated from July 2011 and the back pay check was dated August 5 or 11. (Copies of these checks are available with the envelope they were sent in).

57. September 13, 2011, I received a letter from the EEO Complaint Office stating they have concluded the process of my complaint.

58. September 18, 2011, I received a letter from the EEO Office (Acceptance for Investigation).

59. November 14, 2011, I answered the EEO Investigative Affidavit Complaint packet. (It was mailed back via certified mail to the EEO Office).

However, by way of comparison, I am aware of **"Caucasian employees"** who got in accidents, did not deliver the mail, and hid the mail in storage units and in their cars, some even had sexual harassment claims and all of these employees were rehired. I was reared ended due to

no fault of my own and I was fired.  These Caucasian employees were treated completely different as follows:

1.  Anne Vena:  Opened mail and the Union fought for her and she was rehired. Mail was found again in her trunk and a storage unit dated back to 2013-2014.  That mail was delivered in April 2016 and Vena was fired.

2.  Joanne Beswick:  Was accused of not delivering the mail by numerous of complaints filed by the customers.  She was out of work for close to a year pending investigation. The Union fought for her and she was rehired.  Beswick returned to work and continuously failed to deliver the mail, she hid and stored the mail in a storage unit and mail was found in her car after she clocked out of work and was fired in 2016.

3.  Derek Neff:  Was accused of sexual harassment, the Union fought for him and he was rehired.  Neff was fired in 2016 for engaging in another sexual harassment act.

4.  Patricia Hart:  Has horrible attendance.  Hart backed her LLV up and hit a child and she is still employed.  (According to the Post Office Rule Book you are not allowed to back up an LLV being that there is no rear view mirror).

5.  Howard O'Connor:  Has been caught having sex on numerous occasions in his LLV with other letter carriers and still has his job.

**Please note that all of the USPS employees work out of various locations.**

It appears that my manager and supervisors were immediately jumping to conclusions and stereotyping and dismissing my claims because I am African American woman with 8 children seeking custody of my grandchild.  They didn't question the legitimacy of other employees who had accidents/injuries or refuse to provide them with paperwork or **"lose their paperwork"** repeatedly, etc., or say that they were **"AWOL"** when they were legitimately out on medical leave or refuse them work.  I was fired for **bogus reasons.**  Nor, were men told their injuries had something to do with **"childbirth".**  There's **LOTS** of stereotyping going on here.

1.  Chris Porfert (manager) was well aware of my approved leave from October 18-December 29 due to Workman's Comp injury.  (Unemployment Hearing:  Page 39, Line 2-7) and he continued to fire me.

2.  I was paid for my leave and Chris (manager) continued to fire me because he felt that my claim was **"bogus".** (Unemployment Hearing:  Page 40, Line 10-12).

3.  The Chris admitted that he wrongfully terminated me the first 2 times because he didn't know proper procedure and the United States Post Office paid me from January 2011-May 2011 **only to turn around and terminate me again in June 2011.**

Chris Porfert (manager) misled the courts on numerous occasions:  These are some of the false statements that my manager told to get me fired while he was under oath:

1.  Unemployment Hearing July 11, 2011 he stated:  **He knew my Workman's Comp. claim was accepted at the Unemployment Hearing Office July 11, 2011 and he continued to fire me.**

2.  Chris's signed Declaration dated June 2012, he stated:  **That he was unaware that my Workman's Comp. claim was accepted and my absences were not the result of a work place injury.**

3.  December 23, 2013 EEO Hearing stating:  **He was unaware that my Workman's Comp. claim was accepted.**

My former manager Christopher Porfert and my former Supervisor's Lisa Maydoney and Mark Boyden violated numerous **labor laws** as follows:

1.  Management violated Article 3, 5, 19 and 21 of the National Agreement specifically 3-2 HBK EL-505 when they improperly notified me of my rights for an on the job injury.
2.  Management violated EL 505, Supervisor and Control Point Responsibilities in an Emergency.
3.  Management improperly terminated me.
4.  Management activated my annual leave improperly.
5.  Management activated my annual leave without my permission etc.  Please see all attached violations.
6.  Supervisor Lisa Maydoney put **false information in the accident investigation worksheet.**  Please see attached documentation M57 & M58:
    1.  Line 18:  This is not my Driver's License Number.
    2.  Line 18:  My license did not expire on January 1, 2012.

3. Line 19: My driving experience for this vehicle **is NOT 0.3 y.**

4. Line 19: My postal driving experience **is NOT 0.3 y.**

5. Line 19: Extent of injuries: Lisa puts: Lower back & Neck strain: [This report was completed on December 1, 2010 (by Lisa) and my injuries were not acknowledge or diagnosed by the Workman's Comp. claim was not accepted until February 16, 2011. Please note that Lisa has testified on numerous occasions that my injuries were due to childbirth & epidural and she stated that I reinjured myself].

7. Line 24: Chris & Lisa testified on numerous occasions that there was no damage to the vehicle. **Lisa states: There were scratches to the rear end requiring buffing.**

8. When Chris failed to report the accident.

9. When Chris and Lisa withheld my medical documents from Workman's Comp. which delayed my claim.

10. Chris is not a **doctor** therefore he had no right to diagnose me before; during or after my Workman's Comp. claim was accepted.

11. Chris refused to allow me to work after I was cleared to work being that he felt I faked my work place injuries.

12. Chris Porfert testifies @ the EEO Hearing on December 23, 2013, Page:  216, Line: 7-8: He didn't even believe it was an accident after conducting the investigation.  [Note: Chris **is not authorized** to conduct an investigation which **overrides Workman's Comp. decision.** See attached documentation.

I filed a discrimination/retaliation complaint with the EEOC in June 2011.  It went to hearing approximately 2 years later in December 23, 2013 and I represented myself.

 Then the Administrative Judge issued a decision in April 25, 2014 was not in my favor.  The letter states:

1. If I was dissatisfied with the Postal Services final decision in this case, I may file a civil action in an appropriate U.S. District court within 90 days of your receipt of the Postal Service's final decision within 90 calendar days of the EEOC's final decision on any

appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered.

I appealed that decision and a decision was rendered 2 years later on July 8, 2016 affirming the Administrative Judge's decision.

1. The letter states that I the right to file a Civil Action in an appropriate United States District Court within 90 calendar days from the date that you receive this decision.

 Therefore I am within my 90 calendar day timeframe and I am filing a Civil Action against the United States Post Office in the Federal Court.

The relief I am seeking is: reinstatement, lost wages and benefits, compensatory and punitive damages and all other relief to which I may be entitled to under the law and **I am asking for claim a trial by jury.**

Signature _____

Young, Paula L.

Address        56 Myopia Road

Hyde Park, Mass.  02136

Telephone #  781   913   6688