UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA L. YOUNG,<br><br>      Plaintiff,<br><br>      v.<br><br>MEGAN J. BRENNAN, Postmaster General of the United States Postal Service,<br><br>      Defendant. | Civil Action No.<br>16-12001-FDS |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is a workplace discrimination action. Plaintiff Paula Young was formerly employed with the United States Postal Service. In the fall of 2010, Young was involved in a minor automobile accident, after which she took leave from work for almost eight weeks. The Postal Service did not approve that period of leave, and subsequently declined to renew her temporary appointment. She has brought this action against the Postmaster General alleging that the Postal Service violated the Family Medical Leave Act, unlawfully retaliated against her for engaging in protected conduct, and discriminated against her on the basis of race, sex, and disability.

Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion will be granted in part and denied in part.

## I. Background

Unless otherwise noted, the facts are set forth as alleged in the complaint.[1]

Paula Young is an African-American woman and a former Postal Service employee. (Compl. at 1). Megan Brennan is the Postmaster General of the United States Postal Service. (*Id.*).

Young began working for the Postal Service in 2008. (*Id.* at 2). She was employed as a "Transitional Employee," which was a temporary appointment subject to periodic renewal. (*Id.* ¶ 49; EEOC Decision, Compl. App. at 37). In March 2010, she was transferred to the Waltham Annex Post Office ("the Post Office"). (Compl. at 2).

On October 8, 2010, while Young was driving a postal vehicle in the course of her employment, a third party struck her vehicle from behind. (*Id.* ¶ 1). Neither vehicle was damaged in the accident. (*Id.* ¶ 2). She called her manager, Chris Porfert, who arrived at the scene with a mechanic. (*Id.*). Porfert asked Young if she was okay, to which she responded that she "had a slight headache" and "it was likely that [she] would not feel any real pain until the next day." (*Id.*).

Later that day, Young visited Salem Hospital and received a note from a clinician stating that she should be out of work for three days, until October 11. (*Id.* ¶ 3). The hospital faxed that note to the Post Office. (*Id.*). On October 9, Young called her weekend supervisor to request the day off work due to pain resulting from the accident. (*Id.* ¶ 4).

---

[1] On a motion to dismiss, a court may consider documents attached to or incorporated into the complaint, facts susceptible of judicial notice, concessions in a plaintiff's response to a motion to dismiss, and official public records. *See Newman v. Krintzman,* 723 F.3d 308, 309 (1st. Cir. 2013). In addition, a court may consider all documents whose contents are alleged and the authenticity no party questions as "effectively merge[d] into the pleadings." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Any facts considered by the Court that were not alleged in the complaint fall under one or more of those categories.

On October 11, Young returned to work. (*Id.* ¶ 5). When she inquired about the accident, Porfert told her that he had not filed an accident claim because neither vehicle had been damaged. (*Id.*).

On October 17 and 18, Young again called in sick to work due to pain from the accident. (*Id.* ¶ 8). On October 19, she visited Beth Israel Hospital and was prescribed medication and physical therapy. (*Id.* ¶ 9). A hospital clinician wrote a letter stating that Young should be out of work until November 2. That letter was faxed to the Post Office. (*Id.*). On November 1, Young visited North Shore Rehabilitation, which provided her a note stating that she should be out of work for an additional four weeks. (*Id.* ¶ 11). That note was also faxed to the Post Office. (*Id.*).

On November 2, Young had a telephone conversation with Porfert and two other employees concerning her absences. (*Id.* ¶ 12). The complaint alleges that Porfert stated that Young's injuries were not serious, and that her pain may in fact be "due to childbirth." (*Id.*). Young disagreed, stating that her youngest child is twelve years old and it was therefore impossible for her pain to be attributable to child birth. (*Id.*). Porfert further stated that he would permit Young to take leave to "deal with some persona[l] matters." (*Id.*). She responded that she was on leave due to pain, and not to deal with personal problems. (*Id.*). According to the complaint, Porfert then stated that if Young reported the accident, she "would not like the outcome of it." (*Id.*).

Young was scheduled to visit the Post Office on November 5, to fill out an accident report. (*Id.* ¶¶ 13–14). She called Porfert to reschedule the meeting and to request that a union representative be present. (*Id.* ¶ 14). According to the complaint, Porfert "got furious" and asked whether she was in the union, to which she responded "no"; however, Porfert agreed to allow a union representative to attend. (*Id.*).

3

Young eventually went to the Post Office on November 23. (*Id.* ¶ 15). When she arrived, Porfert allegedly told her to resign from her position so that her resume would not reflect that she had been terminated. (*Id.*). He also allegedly told her that he did not believe that her injuries were caused by the accident, and were due to a different, unspecified injury. (*Id.*). Following that conversation, she was given paperwork to file an accident report concerning the October 8 incident. (*Id.*). She later submitted the paperwork with an application for workers' compensation. (*Id.* ¶ 27; U.S. Dep't of Labor Letter, Compl. App. at 1).

On November 29, Young again visited North Shore Rehabilitation. (*Id.* ¶ 16). She was given a note clearing her to return to work on December 8, subject to a light-duty restriction, which was faxed to the Post Office. (*Id.*). On December 6 and 7, Young called her supervisors to ask when they would place her on the schedule, but she was not provided with an answer. (*Id.* ¶¶ 17–18). On December 13, a clinician advised her that she could return to work with no restrictions. (*Id.* ¶ 20).

On December 23, Young received a letter from a Postal Service Human Resources Manager stating that she had been terminated on October 18, 2010. (*Id.* ¶ 22). Upon receiving that letter, she called a union representative who, in turn, called Porfert. (*Id.*). Porfert informed the union representative that the termination letter had been sent by mistake and that she would be reinstated. (*Id.*).

On December 29, Young received a letter from Porfert stating that she had failed to provide accurate documentation concerning her absences, and therefore had been placed on "absent without official leave" or "AWOL" status. (*Id.* ¶ 23). Porfert asked her to contact him by telephone on January 3, 2011, for a pre-disciplinary conference. Young, however, failed to do so. (*Id.*). One week later, on January 10, she mailed him a letter explaining that she had

4

missed the pre-disciplinary meeting due to a previously-scheduled hospital appointment and that she was contesting her AWOL status. (*Id.* ¶ 26).

On January 26, she received a letter from the Human Resources Manager stating that she had been "separated in error" and providing a pay adjustment. (*Id.* ¶ 29). In February, her claim for worker's compensation was accepted. (*Id.* ¶ 34).

On March 2, Young received a letter stating that she would be terminated on April 9 for failing to attend work regularly. (*Id.* ¶ 37). It stated that she had been AWOL from October 18 through December 31, 2010, and that she had failed to attend a pre-disciplinary meeting on January 3, 2011. (USPS Notice of Removal, Compl. App. at 8). The same day, she spoke to someone named Steve Mahoney, who allegedly told her that if she agreed to forgo her claim for continuation of pay, she would be permitted to return to work; however, if she insisted on the continuation of pay, she would be terminated. (*Id.* ¶ 38).

On April 9, Young applied for unemployment benefits. (*Id.* ¶ 40). On May 13, her application was denied, allegedly because Porfert had contested her entitlement based on her AWOL status. (*Id.* ¶ 47). Ultimately, the unemployment office overturned that denial and found she was entitled to benefits beginning the week of April 16, 2011. (*Id.* ¶ 54).

On April 22, Young received a check in the amount of $4,507.18 as back pay for the pay period between October 18 and December 29, 2010. (*Id.* ¶ 44). She also received two additional checks for back pay in late August. (*Id.* ¶ 56).

On June 13, Young was informed that she would be reinstated by the Post Office, retroactive to May, but that she would not be rehired after her term of appointment expired in June. (*Id.* ¶ 49).

The complaint alleges that Young was placed on AWOL status, despite the fact that she

5

had requested leave and submitted supporting notes from clinicians, because her supervisors questioned whether she was in pain. (*Id.* at 10). It alleges that her supervisors' skepticism arose out of negative stereotypes, based on the fact that she is an African-American woman with eight children, and is seeking custody of her grandchild. (*Id.*). It also alleges that multiple white employees were not subjected to the same scrutiny, including specific employees who had stolen mail, failed to deliver mail, and had "horrible attendance." (*Id.*).

On June 22, 2011, Young filed an Equal Employment Opportunity complaint alleging discrimination on the bases of race, sex, and age, as well as retaliation. (*Id.* at 12; EEOC Decision, Compl. App. at 37; EEOC Appellate Decision, Compl. App. at 41). That complaint did not allege a claim on the basis of disability discrimination. (*Id.*; Def. Ex. A–B). In April 2014, she received an adverse decision, which she appealed. (Compl. at 13). On July 8, 2016, the Commission affirmed the administrative law judge's decision denying her claims. (*Id.*).

On October 3, 2016, Young brought the current action. Defendant has now moved to dismiss for failure to state a claim upon which relief can be granted.

## II. Standard of Review

On a motion to dismiss for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Dismissal is

6

appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

The *pro se* complaint alleges claims for a violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and breach of contract, as well as for discrimination and retaliation in violation of 42 U.S.C. § 1981, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, Title VII, 42 U.S.C. §§ 2000e *et seq.*, and Mass. Gen. Laws. ch. 151B.

#### A. Claims Under the FMLA and 42 U.S.C. § 1981

The complaint alleges claims for a violation of the Family Medical Leave Act, 29 U.S.C.A. §§ 2601 et seq., and for race discrimination in violation of 42 U.S.C. § 1981. Both claims are time-barred.

The FMLA provides a three-year limitations period for "willful violations" of the statute and a two-year period for all other violations. 29 U.S.C. § 2617(c). Plaintiff's section 1981 claims are subject to the four-year limitations period provided by 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004) (finding that claims for post-contract-formation discriminatory conduct in violation of 42 U.S.C. § 1981 are subject to the statute of limitations provided by 28 U.S.C. § 1658). The filing of an EEOC complaint does not toll the limitations period for bringing claims under the FMLA and § 1981, even if those claims are based on the same facts as the EEOC claims. *See Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 465–66 (1975); *see also Ramsey v. Advance Stores Co.*, 2015 WL 3948119, at *5 (D. Kan. June 29, 2015) (collecting cases).

7

Plaintiff's claims under the FMLA and § 1981 could have accrued no later than June 2011, when her appointment was not renewed. She filed the complaint in this action on October 3, 2016, more than five years after accrual. Therefore, plaintiff's claims under the FMLA and § 1981 are time-barred and will be dismissed.

B.  **Breach of Contract Claim**

The complaint alleges a claim for breach of contract. Under Massachusetts law, the essential elements of a claim for breach of contract are "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.,* 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted); *accord Michelson v. Digital Fin. Servs.,* 167 F.3d 715, 720 (1st Cir. 1999).

It is not clear under what theory plaintiff brings the breach of contract claim, but, even construing the *pro se* complaint liberally, it fails to state a claim. The complaint does not contain any specific allegation that plaintiff had a contract with defendant. It also does not allege a plausible claim for breach of a collective bargaining agreement, because plaintiff acknowledges that she was not a member of the union. In any event, a claim for breach of a collective bargaining agreement would be time-barred under the six-month limitations period set forth by 29 U.S.C. § 160(b). *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). In addition, insofar as the claim for breach of contract arises out of plaintiff's allegations concerning discriminatory conduct, such a claim would be preempted by Title VII. *See Brown v. General Serv. Admin.,* 425 U.S. 820, 835 (1976).

Accordingly, because the complaint fails to allege a plausible claim for breach of contract under any potential theory, that claim will be dismissed.

### C. Rehabilitation Act Claim

The complaint alleges a claim under the Rehabilitation Act. *See* 29 U.S.C. §§ 701 *et seq.* The Act provides a private cause of action to "obtain relief for handicap discrimination on the part of the federal government and its agencies." *Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 7 (1st Cir. 2014) (quoting *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981)). Federal regulations provide that "persons who believe they have been discriminated against on the basis of . . . disability . . . must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). Although the First Circuit has not determined whether claims brought under the Rehabilitation Act are subject to dismissal for failure to pursue such administrative remedies, the weight of authority supports a finding that "a *federal employee* who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court." *Bartlett*, 749 F.3d at 8 (emphasis in original) (noting that every circuit to have considered the issue has determined that federal employees' claims under the Rehabilitation Act are subject to dismissal for failure to exhaust administrative remedies); *see also Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 48 n.2 (1st Cir. 2014).

Prior to filing this action, plaintiff brought an EEO complaint that alleged claims concerning discrimination on the basis of sex and race. However, her EEO complaint did not allege a claim on the basis of handicap discrimination. Therefore, her claim under the Rehabilitation Act has not been administratively exhausted and will be dismissed.

### D. Discrimination Claim Under Title VII

The complaint alleges that plaintiff's supervisors discriminated against her on the basis of her race and sex. Under Title VII, it is unlawful for an employer to "discriminate against any

9

individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e–2(a).

Under the framework established by the Supreme Court in *McDonnell Douglas*, to succeed on a claim for employment discrimination where, as here, there is no direct evidence of discrimination, a plaintiff must first make out a *prima facie* case, and upon such a showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973). To prove a *prima facie* case, a plaintiff must demonstrate four elements: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). However, that showing is "a flexible evidentiary standard," not "a rigid pleading standard," and therefore, a complaint need not plead "specific facts establishing the prima facie case of discrimination under . . . *McDonnell Douglas*" to survive a motion to dismiss. *Id.* at 508, 512. However, the elements of the *prima facie* case are relevant at the pleading stage as "part of the background against which a plausibility determination should be made." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

Here, although it is a close question, the complaint appears to allege sufficient facts to state a plausible claim for discrimination. It alleges that Young, as an African-American woman, was a member of two protected groups; that she was qualified for her position; and that an adverse employment action was taken against her. In addition, it alleges some facts to support a claim that the circumstances of her termination could support an inference of discrimination. For example, it alleges that she submitted multiple notes from clinicians supporting her requests for

10

leave, but that her claim that she was prevented from working by pain was nevertheless not credited. In addition, it alleges that Porfert wrongly attributed Young's pain to childbirth, an inference to which male employees were not subjected. It alleges that her supervisors did not question the legitimacy of the leave requests and injuries of white employees, or determine that they were AWOL when they had provided supporting medical documentation for their absences. It alleges that white employees had not been similarly treated despite offenses including "horrible attendance" and accusations that they failed to deliver mail. (Compl. at 10). The complaint attributes that differential treatment to her supervisors' willingness to "jump to conclusions" based on stereotypes because she is an African-American woman with eight children. While that attribution, standing alone, is largely conclusory, the facts alleged in the complaint are—just barely—sufficient to meet the relatively low threshold for stating a plausible claim for discrimination under Title VII.

Accordingly, the motion to dismiss will be denied with respect to plaintiff's discrimination claim under Title VII.

### E. Retaliation Claim under Title VII

Title VII prohibits retaliation against an employee because he or she has "opposed any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

Plaintiff contends that she was retaliated against for filing an accident report despite her supervisor's objections. Filing such a report is wholly irrelevant to plaintiff's protected status and does not constitute a protected activity under Title VII. Plaintiff also filed an EEO complaint on June 22, 2011, which *is* a protected activity. However, that filing came nine days

after she was informed that she would not be rehired when her appointment expired. For a retaliation claim, the "relevant conduct is that which occurred *after* [plaintiff] complained about h[er] superiors' [discriminatory conduct]." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006) (emphasis in original). Because plaintiff's discharge occurred prior to the protected activity—the filing of the EEO complaint—the complaint fails to state a plausible claim for retaliation under Title VII. Therefore, that claim will be dismissed.

### F. Claims Under Mass. Gen. Laws ch. 151B

In addition to the Title VII claims, the complaint alleges claims for discrimination and retaliation under Massachusetts state law, pursuant to Mass. Gen. Laws ch. 151B.

It is well-established that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Misra v. Smithsonian Astrophysical Observatory*, 248 F.3d 37, 39 (1st Cir. 2001) (quoting *Brown*, 425 U.S. at 835); *Rivera-Rosario v. United States Dep't of Agric.,* 151 F.3d 34, 38 (1st Cir. 1998) ("where the gravamen of the claim is Title VII discrimination, the only remedy available is under Title VII"). A federal employee therefore may not bring state-law claims for retaliation and discrimination against a federal employer.

Accordingly, plaintiff's claims under Mass. Gen. Laws ch. 151B will be dismissed.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion is denied with respect to plaintiff's claims for race and gender discrimination in violation of Title VII, and is otherwise granted.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 8, 2017　　　　　　　　　　　　　　United States District Judge