UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA L. YOUNG, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.<br>) 16-12001-FDS |
| MEGAN J. BRENNAN, Postmaster General of the United States Postal Service, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER
JURISDICTION AND MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a workplace discrimination action. Plaintiff Paula Young was formerly a temporary employee of the United States Postal Service. In the fall of 2010, Young was involved in a minor automobile accident, after which she took leave from work for almost eight weeks. The Postal Service did not approve that period of leave, and subsequently declined to renew her temporary appointment. She has brought this action against the Postmaster General, alleging that the Postal Service violated the Family Medical Leave Act; unlawfully retaliated against her for engaging in protected conduct; and discriminated against her on the basis of race, sex, and disability. She is proceeding *pro se*.

The Court granted defendant's motion to dismiss in part, dismissing all claims except plaintiff's claims for race and gender discrimination in violation of Title VII. Defendant has now moved to dismiss the complaint for lack of subject-matter jurisdiction or, in the alternative, for

summary judgment on the remaining claims. For the following reasons, the motion to dismiss for lack of subject-matter jurisdiction will be denied, and the motion for summary judgment will be granted.

## I.  Background

### A.  Factual Background

The following facts are as set forth in record and are undisputed except as noted.[1]

Paula Young is an African-American woman and a former Postal Service employee. (Compl. at 1). Megan Brennan is the Postmaster General of the United States Postal Service. (*Id.*).

Young began working for the Postal Service in 2008. (Porfert Decl. ¶ 2). She was employed as a transitional employee letter carrier ("TE"), which was a temporary appointment for one year. (*Id.*). TEs are paid hourly and do not have set work schedules. (*Id.* ¶ 5). However, they are expected to work at least 40 hours per week, and are permitted to work up to 56 hours per week. (*Id.*). The Postal Service hires TEs to save costs, namely to minimize overtime wages for career letter carriers. (*Id.*). If a TE does not work 40 hours per week, his or her work would have to be handled by another TE or a career letter carrier. (*Id.*). The one-year appointment can be renewed, but under the governing collective bargaining agreement ("CBA"), the Postal Service has discretion in deciding whether to rehire a TE. (*Id.* ¶ 2).

It appears that Young's one-year appointment was renewed in June 2009. In March 2010, she was transferred to the Waltham Annex Post Office. (*Id.* ¶ 3). Her immediate supervisors in Waltham were Mark Boyden and Lisa Maydoney. (Boyden Decl. ¶ 2; Maydoney Decl. ¶ 2). Her second-level supervisor was Christopher Porfert, the Waltham Post Office

---

[1] Plaintiff did not file her opposition to defendant's motions on time. However, in light of her *pro se* status, the Court will accept her late filings and deem her opposition timely.

manager. (Porfert Decl. ¶ 3). In June 2010, before her one-year appointment as a TE expired on June 30, 2010, Porfert rehired her for another one-year term. (*Id.* ¶ 4).

Between late June and mid-October 2010, Young worked an average of 31 hours per week, 9 hours below the expected 40-hour minimum for a TE. (*Id.* ¶ 6).

On October 8, 2010, Young was delivering mail in her Postal Service truck. (Young Dep. at 24-25). When she was stopped at a stop sign, an automobile struck the rear of the truck. (*Id.* at 26-27) ("I felt a push, a jerk, a shove."). There was no damage done to either vehicle. (*Id.* at 35).

Young called Porfert, who immediately visited the accident site accompanied by a repairman. (*Id.* at 36-38; Porfert Decl. ¶ 7). Porfert noted that neither Young nor the other driver appeared to be injured. (Porfert Decl. ¶ 7). However, Young told him that she had a headache, and that "I wouldn't feel any real pain until tomorrow." (Young Dep. at 38). Porfert confirmed that there was no damage done to either vehicle and concluded that the sedan had merely tapped into the truck at low speed. (Porfert Decl. ¶ 8). Afterwards, Young completed her postal route for the day and returned to the Waltham facility. (Young Dep. at 39-40). Porfert did not report any injuries to the Postal Service. (Pl.'s Opp. at 2).[2]

Once she arrived back at the Waltham facility, Young spoke with Maydoney. (Maydoney Decl. ¶ 3). Young did not mention the accident or any injuries to her. She then worked five consecutive days the following week. (Boyden Decl. ¶¶ 3-4). During that time, she did not state she had been injured on October 8, 2010, to any of her supervisors. (Porfert Decl. ¶

---

[2] Plaintiff attached an excerpt from the Postal Service Employee and Labor Relations Manual. (Pl. Ex. 2). She states that Porfert violated § 820 of the manual, titled "Reports and Investigations, Program Evaluations, and Inspections," when he failed to report her injuries. However, defense counsel stated at the motion hearing that because there were no apparent injuries and no damage done to either vehicle, there was nothing to report, as set forth in § 821.123(d).

3

9; Boyden Decl. ¶ 4; Maydoney Decl. ¶ 3).

On November 1, 2010, Young's health-care provider faxed a document to the Waltham Post Office stating that she had suffered "multiple injuries" stemming from a "MVA." (Maydoney Decl. ¶ 5). The fax was the first time the Postal Service had learned that Young complained of an injury. (Porfert Decl. ¶¶ 9, 11; Boyden Decl. ¶ 4; Maydoney Decl. ¶¶ 3, 5).

Upon receiving the fax, Maydoney called Porfert, who instructed her to ask Young for an explanation. (Porfert Decl. ¶ 11; Maydoney Decl. ¶ 5). That evening, Young told Maydoney that she had injured her lower back and neck in the car accident and had sought medical treatment at a hospital. (Maydoney Decl. ¶ 5). According to Maydoney, Young also stated she would need physical therapy and that the accident "worked out great" because she was in the process of moving and could use the time to address some personal issues. (*Id.*).

On November 2, 2010, at approximately 2:00 p.m., Porfert called Young, with Boyden and Maydoney listening in. (Porfert Decl. ¶ 12). According to the supervisors, Young brought up her history of childbirth as an explanation for why she suffered from back pain. (*Id.*; Boyden Decl. ¶ 5; Maydoney Decl. ¶ 6). However, Young testified at her deposition that Porfert suggested that her pain was due to pregnancy. (Young Dep. at 61).

During that same November 2 call, Porfert told Young to come into the office the next day and fill out the required paperwork to report an injury. (Porfert Decl. ¶ 12). The parties agreed that she would come in at 1:00 p.m. the following day, which was November 3. (*Id.*).

Young did not report for work on November 3. At approximately 5:00 p.m. that day, a woman identifying herself as Young's daughter stated that Young was sick and could not attend that day. (Pl. Ex. 3)[3].

---

[3] In her opposition, Young attached an excerpt from the June 29, 2012 declaration of Lisa Maydoney. That prior declaration included the extra statement that Young's daughter had called on November 3, 2010.

Young did not come into the Post Office anytime during the following week. (Maydoney Decl. ¶ 7). According to Porfert, around that time, he decided that he would not rehire her for the following year. (Pl. Ex. 4).[4]

On November 9, 2010, Young called Maydoney, who again told her to return to the office. (Maydoney Decl. ¶ 7). Young, however, did not report for work. After another four days, Maydoney called her and left a voice message instructing her to return to the office. (*Id.*).

Young eventually returned to the office on November 23, 2010, three weeks after she was first instructed to do so. (Porfert Decl. ¶ 12; Boyden Decl. ¶ 5; Maydoney Decl. ¶ 7).

On December 29, 2010, Porfert wrote Young a letter instructing her to come into the office for a pre-disciplinary interview on January 3, 2011, at 10:15 a.m. (Porfert Decl. ¶ 13). Although Young received the letter, she refused to attend the interview. (Young Dep. at 78-79). She informed Porfert of her refusal on January 10, 2011. (*Id.* at 79-80).

On February 8, 2011, Young submitted a claim for benefits under the Federal Employees' Compensation Act ("FECA") to the Department of Labor's Office of Workers Compensation Program ("OWCP"). (Def. Ex. B). Eight days later, on February 16, 2011, OWCP denied her continuation of pay ("COP") benefits because she had failed to report her injury to OWCP on an approved form within 30 days of the alleged injury. (Def. Ex. C). However, OWCP awarded her other benefits for her "claim for a traumatic injury" from the accident. (*Id.*; Pl. Ex. 5). Specifically, on April 19, 2011, OWCP awarded her $4,507.18 for the period between October 8 and December 29, 2010. (Def. Ex. D).

On March 1, 2011, Porfert issued a notice of removal to Young. (Porfert Decl. ¶ 14). In response, Young did not contact an Equal Employment Opportunity ("EEO") counselor. (*Id.*).

---

[4] Exhibit 4 is an excerpt from the EEO hearing transcript for December 23, 2013.

Instead, she appealed OWCP's unfavorable decision concerning her eligibility for COP. After a hearing, OWCP affirmed the initial decision to deny her COP benefits, stating that she failed to timely file her claim. (Def. Ex. E).

On May 3, 2011, Young filed a grievance with her union concerning her notice of removal. (Def. Ex. F). The union and the Postal Service reached an agreement to rescind her removal and reimburse her for lost wages through May 27, 2011. (*Id.*). The agreement did not address whether she would be rehired when her temporary appointment expired on June 30, 2011. (*Id.*).

As noted, Porfert had decided not to rehire her when her temporary appointment expired. That decision was conveyed to Young on June 13, 2011. (Compl. ¶ 49).

Porfert has submitted an affidavit stating that she decided against rehiring Young for three reasons. (Porfert Decl. ¶¶ 16-18). First, before the accident, she had worked only 31 hours per week on average, 9 hours below the expected 40-hour minimum for TEs. (*Id.* ¶ 16). Therefore, Young was not a cost-effective employee. Second, she repeatedly failed to come into the office when instructed by her supervisors, even for a pre-disciplinary interview. (*Id.* ¶ 17). Third, the supervisors all believed that she had fabricated the injuries from the accident, in light of the fact that neither vehicle had been damaged and she did not complain about injuries until well after the fact. (*Id.* ¶ 18).

On June 22, 2011, Young contacted a Postal Service EEO counselor. (Def. Ex. G). She filed an EEO complaint on September 17, 2011, alleging Porfert had retaliated against her and withheld her pay for several months. (Def. Ex. H). On October 24, 2011, the EEO agreed to investigate her complaint. (Def. Ex. I). Following an investigation, an administrative law judge ruled in favor of the Postal Service on all claims: the race and age discrimination and retaliation

6

claims were dismissed on November 24, 2013, and the sex discrimination claim was dismissed on April 7, 2014. (Def. Ex. J). Young then appealed to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the ALJ's decision on July 8, 2016, finding no evidence of discrimination. (Def. Ex. K).

### B. Procedural Background

Young filed this action on October 3, 2016, alleging claims for race discrimination in violation of 42 U.S.C. § 1981, race and sex discrimination and retaliation in violation of Title VII and Mass. Gen. Laws ch. 151B, violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, breach of contract, and violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* On May 8, 2017, the Court granted defendant's motion to dismiss in part, allowing only the claims for race and gender discrimination in violation of Title VII to proceed. Defendant has now moved to dismiss the complaint for lack of subject-matter jurisdiction or, in the alternative, for summary judgment on the remaining claims.

## II. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The doctrine of sovereign immunity bars suits for money damages against the federal government, its agencies, and federal agents acting in their official capacities. *McCloskey v. Mueller*, 446 F.3d 262, 272 (1st Cir. 2006); *Tapia–Tapia v. Potter*, 322 F.3d 742, 745-46 (1st Cir. 2003). A plaintiff bears the "burden of proving [that] sovereign immunity has been waived." *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014).

"Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)) (internal quotations and

7

alterations omitted); *see also* Charles A. Wright & Arthur R. Miller, 14 Fed. Prac. & Proc. § 3654 (4th ed.) ("[T]he absence of consent by the United States to suit has been treated by courts as a fundamental defect that deprives the district court of subject matter jurisdiction."). Because the Postal Service is an as an agency of the United States, it is also entitled to sovereign immunity. *Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16 (1st Cir. 1993). However, "in ruling on a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996).

Defendant contends that the complaint should be dismissed for lack of subject-matter jurisdiction because plaintiff's case is a collateral attack on the OWCP decision concerning her FECA benefits. FECA provides that "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). OWCP's decisions in granting or denying FECA benefits are "not subject to review . . . by a court by mandamus or otherwise." 5 U.S.C. § 8128(b)(2).

In support, defendant relies heavily on *Stone v. Chao*, 284 F. Supp. 2d 241 (D. Mass. 2003), where another judge in this district found that the plaintiff's Rehabilitation Act and constitutional claims were "impermissible backdoor attempts" to challenge an OWCP decision. *Id.* at 247. However, in *Stone*, the plaintiff was substantively challenging the termination of his FECA benefits. *Id*. at 246-47. By contrast, the complaint in this suit stated a claim for sex and race discrimination in violation of Title VII stemming from conduct unrelated to the OWCP decision. In addition, plaintiff was in fact awarded some FECA benefits; she received $4,507.18

in compensation for the period between October 8 and December 29, 2010. (Def. Ex. D). In short, the complaint is not a collateral attack on a FECA benefits decision, and the motion to dismiss for lack of subject-matter jurisdiction will be denied.

## III. Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### B. Analysis

Plaintiff's remaining claims allege discrimination in violation of Title VII. Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A sex discrimination claim under Title VII can be based on allegations of discrimination due to pregnancy. *Id.* § 2000e(k).

Where, as here, no direct evidence of discriminatory animus and causation exists, a plaintiff may establish the necessary elements by circumstantial evidence using the three-stage burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71-72 (1st Cir. 2004). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext, and that the true reason was unlawful discrimination. *Id.* at 34. Thus, "[a]t the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination." *Quinones v. Buick*, 436 F.3d 284, 289-90 (1st Cir. 2006) (citation and quotation marks omitted).

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that

> (1) he or she is a member of a protected class; (2) possessed the necessary qualifications and adequately performed his or her job; (3) was nevertheless dismissed or otherwise suffered an adverse employment action at the hands of his or her employer; and (4) his or her employer sought someone of roughly equivalent qualifications to perform substantially the same work.

*Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F.3d 34, 46 (1st Cir. 2013).

There is no dispute that plaintiff is a member of at least two protected classes, that she was dismissed, and that the position was filled by others. Defendant contends, however, that plaintiff has not put forth any evidence that she has met the second prong of that test—that she adequately performed her job. In support, defendant notes that plaintiff worked an average of 31 hours per week in the four-month period preceding the October 8, 2010 accident, 9 hours below the 40-hour minimum expected of all TEs. (Porfert Decl. ¶ 6). While working low hours is certainly evidence of failure to "adequately perform" a job, the Court will assume, without deciding, that by itself working low hours is not enough to show inadequate performance. The Court will thus assume she has made a *prima facie* case of discrimination.

Defendant has articulated three non-discriminatory reasons for deciding not to reappoint plaintiff to another one-year term. First, she worked low hours and was not a cost-effective employee, undermining the primary purpose of having TEs. (*Id.* ¶ 16). Second, she did not come into the office when instructed, and failed to notify her supervisors beforehand that she would not attend meetings. (*Id.* ¶ 17). Third, she did not voice any concern about injuries stemming from the October 8, 2010 accident until weeks afterwards, giving defendant reason to suspect that she had fabricated the injuries. (*Id.* ¶ 18).

At the final stage of the *McDonnell Douglas* analysis, the burden shifts back to the plaintiff to show that the employer's proffered reason is "'a coverup' for a 'discriminatory decision.'" *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 6 (1st Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 805). In making that showing, a plaintiff must demonstrate both that the articulated reason is "a pretext and that the true reason is discriminatory." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000) (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999)). "Plaintiffs may

11

use the same evidence to support both conclusions, provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Thomas*, 183 F.3d at 57 (citation and quotation marks omitted). When considering evidence of pretext, the court must keep in mind that "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *See Santiago–Ramos*, 217 F.3d at 54.

Here, plaintiff has provided no evidence whatsoever, direct or indirect, that racial animus was the motivating factor behind the decision not to rehire her. Therefore, defendant's motion for summary judgment will be granted as to the race-based discrimination claim.

Plaintiff has a marginally stronger argument for her sex-based discrimination claim. In her deposition, she testified that on November 2, 2010, Porfert told her that her "injuries were due to pregnancy." (Young Dep. at 61). Plaintiff further testified that Porfert's mention of pregnancy was spontaneous. (*Id.* at 62) (Question: It's your testimony that out of the blue, Mr. Porfert used the word 'pregnancy' or 'childbirth'? Answer: That is correct.).[5]

Even assuming that Porfert made that statement, it was an ambiguous stray remark. That is not sufficient, standing alone, to show pretext. It is well-settled that "stray workplace remarks, as well as statements made by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *Gonzales v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) (citation and quotation marks omitted).

It is true that Porfert was the ultimate decision-maker who determined whether plaintiff would be rehired. In addition, although the final decision not to rehire plaintiff was not issued

---

[5] Porfert, Boyden, and Maydoney all testified that plaintiff was the one who brought up her history of childbirth to explain her back pain. (Porfert Decl. ¶ 12; Boyden Decl. ¶ 5; Maydoney Decl. ¶ 6).

until seven months after the conversation in question, Porfert testified before the EEO that he had decided in early November 2010 not to rehire her. (Pl. Ex. 6). Nevertheless, "it is far from clear that the alleged remarks bespeak any [sex]-based animus at all." *Gonzalez*, 304 F.3d at 70 (citing *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir. 1999)) (noting that "a statement that plausibly can be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus"). In her deposition, plaintiff testified that Porfert suggested pregnancy as an explanation for any back-related pain she was suffering. (Young Dep. at 61-62) ("And [Porfert] told me that my injuries—I guess something—that it had nothing to do with the job, and then he told me that my injuries were due to pregnancy.").[6] Even if Porfert's statement "could reasonably have been considered gender-related, there was little else to suggest gender bias." *LaValley v. Quebecor World Book Servs. LLC*, 315 F. Supp. 2d 136, 149 (D. Mass. 2004).

In the absence of any other evidence, plaintiff has failed to put forth sufficient facts for "a reasonable fact finder to infer that the employer's decision was motivated by [gender] animus." *Williams v. Raytheon Co.*, 45 F. Supp. 2d 124, 129-30 (D. Mass. 1999) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993) (quotation marks omitted)). *Cf. Feder v. Bristol-Myers Squibb Co.*, 33 F. Supp. 2d 319, 336 (S.D.N.Y. 1999) (finding a single "highly ambiguous remark," coupled with the "weakness of [plaintiff's] *prima facie* case," cut against any reasonable factfinder finding gender discrimination). Accordingly, defendant's motion for summary judgment will be granted as to the sex-based discrimination claim.[7]

---

[6] Plaintiff testified that the last time she was pregnant was 12 years before the conversation occurred. (Young Dep. at 61).

[7] Because the Court finds that plaintiff has failed to provide sufficient evidence to prove her claims, it need not address defendant's argument that the claims of discrimination stemming from conduct in March 2011 are time-barred.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss for lack of subject-matter jurisdiction is DENIED, and defendant's motion for summary judgment is GRANTED.

**So Ordered.**

Dated: May 9, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge